23CA1293 Peo v Olson 10-02-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1293
El Paso County District Court No. 20CR3264
Honorable Michael P. McHenry, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Luke Morris Olson,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Victor T. Owens, Alternate Defense Counsel, Parker, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Luke Morris Olson, appeals the district court's denial of his Crim. P. 35(c) motion alleging ineffective assistance of counsel in connection with an order imposing restitution. We affirm.

## I.     Background

¶ 2     According to the affidavit for an arrest warrant, on the day in question, Olson was driving on a major road in Colorado Springs, "weaving in and out of traffic," "cutting vehicles off" during lane changes, and rapidly accelerating and braking. Witnesses observed Olson quickly change lanes directly in front of a motorcyclist, causing the motorcyclist to "lock[] up his own brakes" in an effort to avoid a collision. The motorcyclist was ejected from the motorcycle and suffered serious injuries, including eight rib fractures, a collapsed lung, and a brain injury. Olson fled the scene. A motorist who witnessed the crash followed Olson and tried to block him in at a traffic light. Olson backed up, hitting another car, and fled onto the interstate.

¶ 3     The district attorney charged Olson with leaving the scene of an accident, vehicular assault, reckless driving, and careless

driving causing bodily injury. Olson resolved the charges through a plea agreement containing the following terms:

- Olson agreed to plead guilty[1] to leaving the scene of an accident;

- he acknowledged that he was "the driver of a vehicle directly involved in an accident resulting in serious bodily injury to [the motorcyclist]" and that he failed to stop at the scene of the accident;

- he agreed to "pay restitution for all counts and cases governed by th[e] plea agreement, including counts and/or cases dismissed as part of th[e] plea agreement," and he "stipulate[d] to causation for restitution purposes in this case and in any case(s) dismissed as part of th[e] agreement";

- the prosecution agreed to "dismiss all other remaining charges in th[e] case subject to the payment of restitution"; and

---

[1] Olson entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), but he acknowledged during the Crim. P. 11 advisement that "an *Alford* plea still counts the same as a regular guilty plea." *See People v. Birdsong*, 958 P.2d 1124, 1127 (Colo. 1998) ("An *Alford* plea is a guilty plea."). Thus, we reject his unsupported argument that an *Alford* plea somehow precluded the court from imposing restitution for all of the claimed losses.

- the parties agreed that sentencing would be open, with a cap of two years in the custody of the Department of Corrections (DOC).

¶ 4 The district court accepted Olson's guilty plea and sentenced him to two years in the DOC. At the sentencing hearing in April 2021, Olson represented that his insurance company had covered the motorcyclist's losses. Because the parties did not know whether the payout satisfied Olson's entire restitution obligation, the court found that Olson owed restitution and reserved the determination of the amount for ninety-one days.

¶ 5 About two months later, the prosecution submitted a request for $328,008.07 in restitution to be paid to six parties[2] who had reported losses due to Olson's conduct. The next day, the court granted the request and entered a restitution order.

¶ 6 In April 2022, Olson filed a pro se Crim. P. 35 motion for postconviction relief, arguing that he had recently learned of the restitution order; he was not liable for restitution because his

---

[2] Almost all of the requested restitution was ordered to be paid to the motorcyclist's insurance company, American Family Insurance, and to Penrose St. Francis Hospital.

3

insurance company, Farmer's Insurance, had paid the motorcyclist $25,000 to settle all claims arising from the accident; and his public defender had failed to object to the restitution motion and request a hearing, entitling him to vacatur of the order.

¶ 7 The district court reappointed Olson's public defender to represent him. The public defender filed an objection to the restitution order on the same grounds articulated in the pro se motion and requested a hearing. The parties and the district court agreed to bypass Crim. P. 35(c) proceedings and proceed directly to a restitution hearing. The prosecution also agreed to apply the $25,000 insurance payment as a credit against any restitution judgment.

¶ 8 But the day before the scheduled hearing, the public defender moved to withdraw because Olson "wishe[d] to raise issues that involve ineffective assistance of counsel." On the day of the hearing, Olson confirmed that he wanted to forgo the hearing in favor of pursuing his Crim. P. 35(c) ineffective assistance of counsel claim. The district court appointed alternative defense counsel (ADC) to represent Olson in his postconviction proceedings.

¶ 9     ADC filed a supplemental Crim. P. 35(c) motion, asserting that the public defender provided ineffective assistance by failing to timely object to the restitution order and request a restitution hearing and by failing to obtain a setoff for the $25,000 insurance payment.[3]  According to ADC, had a hearing been held, no restitution would have been ordered because the offense of conviction — leaving the scene of an accident — did not proximately cause any losses, and Olson could not be held liable for losses attributable to the dismissed counts.

¶ 10    The court held a nonevidentiary hearing on the motion in June 2023.  First, ADC raised the setoff issue.  The prosecution acknowledged that Olson was entitled to a $25,000 setoff against the restitution amount, and the court agreed to "accept the stipulation" and to enter an amended payout order reflecting the credit.  Next, ADC raised the legal issue of whether Olson was only

---

[3] ADC's supplemental motion also claimed that the public defender should have challenged the "accuracy of the alleged damages" to the listed victims, raised the insurance company's settlement agreement with the motorcyclist as a limit on liability, and preserved Olson's right to appeal the restitution order.  But because Olson does not reassert those claims on appeal, we consider them abandoned.  *See People v. Delgado*, 2019 COA 55, ¶ 9 n.3.

liable for losses proximately caused by the conduct underlying the charge to which he pleaded guilty. ADC conceded that if Olson had pleaded guilty to causing the accident, "it would have been obvious that restitution was part of the plea [agreement]." But, he argued, because those charges had been dismissed, Olson's stipulation to causation in the plea agreement could only have referred to leaving the scene of the accident, and that conduct did not cause any loss.

¶ 11 The court generally denied Olson's motion, concluding that, "when [a] defendant agrees to pay restitution on dismissed counts as part of the plea deal and acknowledges restitution in the written plea agreement the way Mr. Olson has here[,] . . . trial counsel could not be ineffective by not contesting the restitution." However, the court entered an amended order reducing the amount of restitution by $25,000.

II. Legal Principles and Standard of Review

A. Legal Principles

¶ 12 "A defendant convicted of a felony offense must pay restitution for any pecuniary loss he proximately caused [the] victim." *Martinez v. People*, 2024 CO 6M, ¶ 13 (citing § 18-1.3-602(3)(a), C.R.S. 2025); *see also* § 18-1.3-603(1), C.R.S. 2025 (every order of

conviction for a felony offense must include the consideration of restitution).

¶ 13    In the restitution context, the term "victim" is not limited to the person against whom a felony has been perpetrated but instead includes "any person aggrieved by the conduct of an offender." § 18-1.3-602(4)(a).  And the definition of "person" includes a corporation or other legal entity.  § 2-4-401(8), C.R.S. 2025. Therefore, "insurance companies generally qualify as victims" under the restitution statute, *People v. Lockett*, 2025 COA 1, ¶ 16, as does a hospital.

¶ 14    Proximate cause in this context is defined as a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained. *People v. Dyson*, 2021 COA 57, ¶ 13.  "Absent an agreement between the defendant and the prosecution at the time the plea is entered, a court may not impose restitution for pecuniary losses proximately caused by conduct exclusively related to dismissed charges." § 18-1.3-603(11); *People v. Roddy*, 2021 CO 74, ¶ 5.

¶ 15    The imposition of restitution is a critical stage of the criminal proceedings.  *People v. Hernandez*, 2019 COA 111, ¶ 24.  Because

7

criminal defendants have a right to counsel at every critical stage of the proceedings, *People v. Guzman-Rincon*, 2015 COA 166M, ¶ 20, a defendant is entitled to the effective assistance of counsel in resolving the issue of restitution, *see Hutchinson v. People*, 742 P.2d 875, 880 (Colo. 1987) ("[T]he right to counsel includes the right to effective assistance of counsel.").

¶ 16    To demonstrate that counsel was ineffective, a defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defense, meaning there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). The failure to establish either of these two prongs defeats an ineffective assistance of counsel claim. *People v. Thompson*, 2020 COA 117, ¶ 50.

## B.    Standard of Review

¶ 17    A court may deny a Crim. P. 35(c) motion without a hearing if the allegations are merely conclusory, vague, or lacking in detail; the claims raise only issues of law; the allegations, even if true, do not provide a basis for relief; or the record directly refutes the

defendant's claims or otherwise clearly establishes that the motion lacks merit. *See People v. Castillo*, 2022 COA 20, ¶ 14; *People v. Duran*, 2015 COA 141, ¶ 9.

¶ 18 We review a court's summary denial of a Crim. P. 35(c) motion de novo. *People v. Cali,* 2020 CO 20, ¶ 14.

### III.   Analysis

¶ 19 Olson contends that he is entitled to a hearing on his motion because he sufficiently alleged that the public defender provided ineffective assistance by failing to object to the restitution order on causation grounds and request a hearing. For several reasons, we disagree.

¶ 20 First, the district court held a hearing on the motion. Olson says that his motion "raises questions of fact, which remain unanswered by the existing record," but he does not identify any of those questions of fact and, as far as we can tell, the facts are undisputed, meaning an evidentiary hearing is unwarranted. *See Castillo*, ¶ 14. And if Olson thought that further fact finding was necessary, ADC could have said so at the hearing, rather than telling the court that resolution of the motion turned on "an interesting legal issue."

¶ 21 Second, the basis for Olson's ineffective assistance of counsel claim is that the public defender failed to timely object to the restitution order and request a hearing. But later, the public defender *did* object and request a hearing, and a hearing was scheduled. So it is unclear how the public defender's initial lack of diligence prejudiced Olson. The only reason the hearing did not proceed was because Olson opted to forgo the hearing to pursue an ineffective assistance of counsel claim against the public defender, even though the remedy for that claim is a restitution hearing.

¶ 22 Third, even setting both of those issues aside, Olson cannot show a reasonable probability that but for the public defender's alleged deficient performance, the outcome of the restitution proceeding would have been different. Olson contends that had a hearing been held, the prosecution could not have proved that his conduct in leaving the scene of the accident proximately caused any losses. But the prosecution did not have to prove that, because in the plea agreement, Olson agreed to pay restitution for the dismissed counts, including vehicular assault. And as ADC acknowledged at the hearing (and appears to concede on appeal),

the conduct underlying the dismissed counts indisputably caused the victims' losses.

¶ 23    Olson says that, despite his agreement, the court could not impose restitution in connection with the dismissed charges.  But the case law is uniformly to the contrary.  *See Roddy*, ¶ 28 (explaining that "the prosecution and the defendant may strike a plea agreement that extends the scope of the restitution order to include . . . dismissed counts," but reversing the restitution order because "the plea agreement contained no language that Roddy would pay restitution for injury or loss related to the dismissed charges"); *People v. Sosa*, 2019 COA 182, ¶ 30 ("[W]hen a defendant agrees to make restitution for losses stemming from uncharged conduct or dismissed counts, [he] is bound by that agreement."); *People in Interest of A.V.*, 2018 COA 138M, ¶ 14 (when a defendant agrees in a plea agreement to pay restitution for dismissed counts, he cannot challenge causation as to those counts).

¶ 24    To the extent Olson argues that the plea agreement's restitution provisions are too vague to impose liability for dismissed counts, that argument amounts to a challenge to the restitution order, not a claim that counsel provided ineffective assistance.  We

11

may not review a challenge to the restitution order, though, because Olson failed to file a direct appeal within the deadline. *See* C.A.R. 4(b)(1) (a defendant is required to file a notice of appeal within forty-nine days after entry of the order appealed from); *People v. Baker*, 104 P.3d 893, 895 (Colo. 2005) ("Unless notice of appeal is timely filed, the court of appeals lacks jurisdiction to hear the appeal."). And as noted, he does not reassert any ineffective assistance of counsel claim related to a direct appeal.

¶ 25 Regardless, we see nothing vague or equivocal about the term requiring Olson to "pay restitution for all counts and cases governed by this plea agreement, including counts and/or cases dismissed as part of this plea agreement" or the term requiring him to "stipulate[] to causation for restitution purposes." A reasonable person would understand those terms to mean that he had to pay restitution for dismissed counts. *See People v. Johnson*, 999 P.2d 825, 829 (Colo. 2000). And in any event, Olson has never alleged that he did not understand the plea agreement's provisions or that the public defender misadvised him about restitution.

¶ 26 Finally, we decline to consider the argument that the provisions requiring Olson to pay restitution for dismissed counts

12

render the plea agreement invalid.  That argument was not raised in the motion and is entirely undeveloped on appeal.  *See People v. Huggins*, 2019 COA 116, ¶ 17 (issues not raised in the postconviction motion are not preserved for appeal); *People v. Garcia*, 2022 COA 144, ¶ 6 n.1 (An appellate court will not consider a "bald legal proposition presented without argument or development.").

## IV.   Disposition

¶ 27    The order is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.